# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MONDELEZ GLOBAL LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 1:18 C 2112 |
| v. ) | Hon. Marvin E. Aspen |
| ) | |
| INTERNATIONAL UNION OF ) | |
| OPERATING ENGINEERS LOCAL 399, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

MARVIN E. ASPEN, District Judge:

Before us is Defendant International Union of Operating Engineers Local 399's (the "Union") motion to dismiss Plaintiff Mondelez Global LLC's ("Mondelez") complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Mot. (Dkt. No. 16).) Count I of Mondelez's complaint seeks a pre-arbitration declaration that consolidated grievances are not substantively arbitrable and that an arbitration award in favor of the Union would violate Illinois public policy. (Compl. (Dkt. No. 1) ¶ 40.) Count II of Mondelez's complaint petitions this Court to stay arbitration pending the resolution of proceedings before us. (*Id.* ¶¶ 42–43.)

For the reasons set forth below, we decline to issue a pre-arbitration declaratory judgment and dismiss Count I, without prejudice. We dismiss Count II with prejudice as moot.

## BACKGROUND

For purposes of a motion to dismiss, we accept all well-pleaded factual allegations as true and draw all reasonable inferences in favor of the plaintiff. *Katz-Crank v. Haskett*, 843 F.3d 641, 646 (7th Cir. 2016). Mondelez is an industrial manufacturer and distributor of

cookies, crackers, and other food products. (Compl. ¶ 6.) The Union represents approximately 62 of the approximately 1,200 employees in Mondelez's Chicago bakery. (*Id.* ¶ 13.)

Beginning in March 2015, Mondelez prohibited Union members from voluntarily working seven consecutive days without a 24-hour period of rest. (*Id.* ¶ 22.) Mondelez instituted its ban pursuant to its reading of Illinois' One Day Rest in Seven Act ("ODRISA"), 820 ILCS 140/2.[1] (Compl. ¶ 22.) Mondelez claims that ODRISA prohibits it from allowing its employees to work seven consecutive days without a full day of rest unless Mondelez has first received a permit allowing such a practice from the Illinois Department of Labor ("IDOL"). (*Id.* ¶¶ 15–19.)

After the March 2015 prohibition, Mondelez received approximately 1,500 grievances from Union members, claiming that they were entitled to voluntarily work seven consecutive days. (*Id.* ¶ 23.) Mondelez received no response to a request for a legal opinion on the matter that it lodged with the IDOL. (*Id.* ¶¶ 24–25.) In June 2015, the parties agreed to consolidate the grievances and proceed to arbitration. (*Id.* ¶ 26.) After two years in which the Union allegedly took no steps to engage in the process of choosing an arbitrator, the parties selected an arbitrator and set an arbitration date. (*Id.* ¶¶ 28, 29.) About two weeks prior to the arbitration, Mondelez filed this suit in the Northern District of Illinois seeking a declaratory judgment that an arbitration in favor of the Union would be contrary to Illinois public policy as set forth in ODRISA, and seeking to stay arbitration pending resolution in federal court. (*Id.* ¶¶ 40, 42–43.)

---

[1] As relevant to this case, ODRISA states: "Every employer shall allow every employee except those specified in this Section at least twenty-four consecutive hours of rest in every calendar week in addition to the regular period of rest allowed at the close of each working day." 820 ILCS 140/2(a). The exceptions referenced in the statute do not apply to the Union's members. (Compl. ¶ 17.)

2

**LEGAL STANDARD**

"The purpose of the motion to dismiss is to test the sufficiency of the complaint, not decide the merits." *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990) (internal quotation marks omitted) (quoting *Triad Assocs., Inc. v. Chi. Hous. Auth.*, 892 F.2d 583, 586 (7th Cir. 1989)). Dismissal pursuant to Rule 12(b)(6) is proper only if a complaint lacks enough facts "to state a claim [for] relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949–50 (2009) (internal quotations omitted) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007)); *accord Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618–19 (7th Cir. 2007). The plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964–65). That is, while the plaintiff need not plead "detailed factual allegations," the complaint must allege facts sufficient "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964–65. Again, we accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiff. *White v. Keely*, 814 F.3d 883, 887–88 (7th Cir. 2016); *Agnew v. Nat'l Collegiate Athletic Ass'n*, 683 F.3d 328, 334 (7th Cir. 2012) ("In reviewing the sufficiency of a complaint, we must accept all well pled facts as true and draw all permissible inferences in favor of the plaintiff.").

**ANALYSIS**

The Union presents several grounds for dismissal. (Mem. in Supp. of Mot. to Dismiss ("Mem.") (Dkt. No. 18).) Most important for our purposes, the Union contends that Mondelez's

complaint is barred by principles of collateral estoppel, (*id.* at 6–8), and separately urges the Court to, in our discretion, decline to issue a declaratory judgment, (*id.* at 4–6).

I. **DECLARATORY JUDGMENT**

Mondelez seeks a declaration under the Declaratory Judgment Act, 28 U.S.C. § 2201, that the grievances are not arbitrable and that an award in favor of the Union would violate ODRISA and Illinois public policy. (*See* Compl. ¶¶ 2, 40.) Under the Declaratory Judgment Act, we "may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a). The statute's text vests the issuing court with wide discretion to decline issuing a declaratory judgment. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286, 115 S. Ct. 2137, 2142 (1995) (observing the "statute's textual commitment to discretion"). "If a district court, in the sound exercise of its judgment, determines after a complaint is filed that a declaratory judgment will serve no useful purpose, it cannot be incumbent upon that court to proceed to the merits before staying or dismissing the action." *Id.* at 288, 115 S. Ct. 2143; *see also NewPage Wisc. Sys. Inc. v. United Steel, Paper & Forestry, Rubber, Mfg., Energy Allied Indus. & Serv. Workers Int'l Union*, 651 F.3d 775, 780 (7th Cir. 2011) (admonishing district court to "employ 'considerations of practicality and wise judicial administration' to decide whether to address the merits" of a declaratory judgment action (quoting *Wilton*, 515 U.S. at 288, 115 S. Ct. at 2143)).

As explained below, we decline to issue a declaratory judgment at this stage because (1) although collateral estoppel principles are clearly implicated in this case, the posture of related cases counsels against a decision on that ground at this time; (2) under the Norris-LaGuardia Act, 29 U.S.C. § 101 *et seq.*, our power to issue a pre-arbitration declaratory judgment in a labor dispute such as this is at least suspect, if not clearly prohibited; and

(3) proceeding to arbitration may negate the need for federal court intervention or, at the very least, would fully develop the issues to be decided. We address each of these rationales in turn.

### A. Collateral Estoppel

The Union argues that collateral estoppel should apply to block Mondelez's suit. (Mem. at 7; Def.'s Mot. for Leave to File Suppl. Auth. (Dkt. No. 32) at 2.) The doctrine of collateral estoppel, also known as issue preclusion, "bars successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim." *Coleman v. Donahoe*, 667 F.3d 835, 853 (7th Cir. 2012) (quoting *Taylor v. Sturgell,* 553 U.S. 880, 892, 128 S. Ct. 2161 (2008)). Formally, collateral estoppel consists of four requirements:

> (1) the party against whom collateral estoppel is asserted must have been fully represented in the prior litigation; (2) the issue sought to be precluded must be identical to an issue involved in the prior litigation; (3) the issue must have been actually litigated and decided on the merits in the prior litigation; and (4) the resolution of that issue must have been necessary to the court's judgment.

*Gray v. Lacke*, 885 F.2d 399, 406 (7th Cir. 1989).

In the background of the current dispute are two other cases concerning the same legal issue brought by Mondelez against two other unions, both stemming from Mondelez's 2015 decision to prohibit employees from working seven consecutive days without a day of rest. The first case, *Mondelez Global v. Int'l Ass'n of Machinists and Aerospace Workers Dist. No. 8*, No. 17-840, 2017 WL 3189476 (N.D. Ill. July 27, 2017) ("*Mondelez I*"), concerned "the exact issue present in the instant ODRISA grievances." (Compl. ¶ 33.) The arbitrator in *Mondelez I* had ruled in favor of the International Association of Machinists ("IAM"), and Mondelez sued to vacate the arbitration award on the ground that it violated Illinois public policy. (*Id.*) The court found, first, that Mondelez had waived its public policy argument by failing to bring a pre-

5

arbitration declaratory judgment action. *Mondelez I*, 2017 WL 3189476, at *2. The court then continued, in a more fulsome analysis, to find that ODRISA did not establish a clear public policy against employees volunteering to work seven consecutive days without one day of rest. *Id.* at *3. As such, the court refused to vacate the arbitration as contrary to public policy. *Id.* at *4. Mondelez appealed that decision, and the case remains open before the Seventh Circuit. *See Mondelez Global LLC v. Int'l Ass'n of Machinists and Aerospace Workers Dist. No. 8*, No. 17-2743 (7th Cir. filed Aug. 24, 2017). In its present complaint, Mondelez explains that it "continues to dispute that refusal to arbitrate is necessary to preserve an argument concerning public policy and substantive arbitrability," but that it filed the present action to address the issue before submitting to arbitration. (Compl. ¶ 37.)

The second case, decided during the pendency of the current motion and noticed by the Union as supplemental authority, (Dkt. No. 32), is *Mondelez Global v. Int'l Ass'n of Machinists and Aerospace Workers, AFL-CIO, Dist. No. 8, Local Lodge 1202*, No. 17-8628, 2019 WL 77422 (N.D. Ill. Jan. 2, 2019) ("*Mondelez II*"). This case dealt with precisely the same issue as *Mondelez I*, *i.e.*, Mondelez sued on public policy grounds to set aside an arbitration in favor of a union that allowed union workers to voluntarily work seven consecutive days without one day of rest. *Id.* at *1. *Mondelez II*, unlike *Mondelez I*, found that Mondelez had *not* waived its public policy argument by failing to seek a pre-arbitration declaratory judgment. *Id.* at *2. However, as in *Mondelez I*, the court in *Mondelez II* proceeded to the merits of Mondelez's public policy argument and found that ODRISA "does not represent a 'well-defined and dominant' public policy" prohibiting workers from voluntarily working overtime. *Id.* at *4. As such, the arbitrator's finding for the union in that case could not be set aside on public policy grounds. *Id.*

Given these decisions, the current case presents forceful reasons to apply collateral estoppel to bar the present claims. Mondelez has litigated "the exact issue present in the instant ODRISA grievances," (Compl. ¶ 33), not once, but twice, to a final judgment in the district court. *Mondelez I*, 2017 WL 3189476 (N.D. Ill. July 27, 2017); *Mondelez II*, 2019 WL 77422 (N.D. Ill. Jan. 2, 2019). Mondelez does not dispute that it was represented in both prior cases. Rather, Mondelez contends that its public policy argument is not foreclosed by *Mondelez I* because that court first found that Mondelez waived its argument before finding against Mondelez on the merits. (Pl.'s Brief in Opp. to Def.'s Mot. to Dismiss ("Resp.") at 11.) This argument is undermined by the decision in *Mondelez II*, which bypassed the waiver argument and proceeded directly to the merits to hold that ODRISA does not establish a public policy prohibiting employees from volunteering to work overtime. 2019 WL 77422, at *4.[2]

Mondelez also argues that, at least in *Mondelez I*, it has not had a "full and fair opportunity to litigate" because an appeal is pending in that case. (Resp. at 10.) This is incorrect; a pending appeal from a final judgment of a district court does not preclude application of collateral estoppel. *See Prymer v. Ogden*, 29 F.3d 1208, 1213 n.2 (7th Cir. 1994) (stating the Seventh Circuit has "adhered to the general rule in American jurisprudence that a final judgment of a court of first instance can be given collateral estoppel effect even while an appeal is pending"); *Williams v. C.I.R.,* 1 F.3d 502, 504 (7th Cir. 1993) ("What is sure is that a judgment final in the trial court may have collateral estoppel effect even though the loser has not exhausted his appellate remedies."); *Kurek v. Pleasure Driveway & Park Dist., Etc.,* 557 F.2d 580, 595 (7th Cir. 1977), *vacated on other grounds,* 435 U.S. 992, 98 S. Ct. 1642 (1978).

---

[2] The court in *Mondelez II* did not address any collateral estoppel or issue preclusion arguments based on *Mondelez I*, instead conducting an independent analysis on the merits of the parties' summary judgment motions.

However, an appeal currently pending on the underlying issue in this case makes for a potentially awkward result should we rule on collateral estoppel grounds at this stage. Wright and Miller discuss the "[s]ubstantial difficulties" that may arise by applying issue preclusion while an appeal on a prior suit is outstanding: "The major problem is that a second judgment based upon the preclusive effects of the first judgment should not stand if the first judgment is reversed. . . . This result should always be avoided" by some protective mechanism. 18A Fed. Prac. & Proc. Juris. § 4433 (2d ed. Sept. 2018 update). Indeed, appellate review is often necessary to bolster "confidence that the result achieved in the initial litigation was substantially correct." *Bravo-Fernandez v. United States*, 137 S. Ct. 352, 358 (2016) (quoting *Standefer v. United States,* 447 U.S. 10, 23 n.18, 100 S. Ct. 1999 (1980)). In the present case, an appeal is pending in *Mondelez I*. (Compl. ¶ 36; Resp. at 10–11.) It is as yet unclear whether Mondelez will seek to appeal *Mondelez II*. While we express no opinion on the underlying merits of this suit or the correctness of the prior decisions, we recognize that final disposition is uncertain before the appellate court has definitively weighed in.

Considering the posture of these cases, and to maximize opportunity for full ventilation of the issues, prudence dictates that collateral estoppel not be employed now where we have discretion not to do so in a declaratory relief action.

B.  **The Norris-LaGuardia Act**

For another reason, we find it appropriate to deny declaratory relief at this stage: the Norris-LaGuardia Act ("NLGA"), 29 U.S.C. § 101 *et seq.*, calls into serious question whether we can grant the pre-arbitration relief that Mondelez seeks. The NLGA divests federal courts of "jurisdiction to issue any restraining order or temporary or permanent injunction in a case involving or growing out of a labor dispute," except in narrowly prescribed circumstances.

29 U.S.C. § 101. The Seventh Circuit has squarely held that the NLGA, when it applies, prohibits courts from issuing injunctive relief to halt a pending arbitration in a labor dispute. *AT&T Broadband, LLC v. Int'l Bhd. of Elec. Workers*, 317 F.3d 758, 759–60 (7th Cir. 2003) (finding that arbitration "concerning terms or issues of employment" presents "'a case involving or growing out of' [an] underlying 'labor dispute,'" thus falling within the scope of the NLGA). A later opinion in this district directly addressed whether a pre-arbitration declaratory judgment involving a labor dispute is available under the NLGA, engaging in an extended discussion that at least called into doubt whether such relief was viable in this circuit. *Univ. of Chi. v. Faculty Ass'n of Univ. of Chi. Lab. Sch., Local 2063, Am. Fed'n of Teachers*, No. 10 C 4843, 2011 WL 13470 (N.D. Ill. Jan. 4, 2011). As the law appeared unsettled, that court opted for an alternative ground to "exercise its discretion under the Declaratory Judgment Act, 28 U.S.C. § 2201, to decline to issue the declaration at this juncture." *Id.* at *3.

We find a similar approach warranted here. First, neither party raised, let alone briefed, this potential impediment to our power to declare pre-arbitration rights in a labor dispute as alleged by Mondelez. Second, the NLGA does allow labor injunctions under strict procedures when "unlawful acts" are threatened or occurring. 29 U.S.C. § 107(a). Although the Seventh Circuit has hinted that "unlawful acts" under the NLGA might be read narrowly, *see E. St. Louis Laborers' Local 100 v. Bellon Wrecking & Salvage Co.*, 414 F.3d 700, 708 (7th Cir. 2005) (citing cases suggesting, without deciding, that "unlawful acts" may be narrowly construed to instances of violence, intimidation, or the like), whether this exception would apply to this case is uncertain. Both of the above circumstances would necessitate additional briefing that might further delay a resolution of the dispute between the parties in this case, when that delay can easily be avoided by submitting the grievances to arbitration in the first instance. As the district

9

court reasoned in *University of Chicago*, "immediate consideration of [Mondelez's] request, even if not prohibited by the Norris–LaGuardia Act, would run counter to the Seventh Circuit's strong preference for allowing arbitrations to proceed before 'litigat[ing] about arbitrability.'" 2011 WL 13470, at *4 (quoting *AT&T Broadband*, 317 F.3d at 762). Here too, the best course is to allow the parties to arbitrate their dispute before determining the issues in federal court.

C. **Development of the Issues**

The third reason to decline a declaratory judgment at this juncture is that the dispute between the parties before this Court is not yet fully developed. If, after proceeding to arbitration, the arbitrator finds in favor of Mondelez, the issues in this suit are all moot. *See id.* at *4 (citing the possibility of mootness as a consideration in favor of staying a decision on declaratory judgment). And as the court in *Mondelez II* opined, a pre-arbitration ruling "based on the not-yet-realized possibility that an arbitration award might run afoul of public policy" would likely be premature. 2019 WL 77422, at *2.

Mondelez argues that it brought this suit to avoid the waiver issue that the court found in *Mondelez I*. (Resp. at 4.) *See Mondelez I*, 2017 WL 3189476, at *2. Even if a pre-arbitration declaratory action is necessary to maintain a public policy claim to vacate an arbitral award, which the above discussion of the NLGA should call into doubt, Mondelez has preserved its claim before this court so long as Mondelez raises the issue in arbitration. *See Ganton Techs., Inc. v. Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am.*, 358 F.3d 459, 462 (7th Cir. 2004) ("The failure to pose an available argument to the arbitrator waives that argument in collateral proceedings to enforce or vacate the arbitration award."); *Chi. Newspaper Guild v. Field Enterprises, Inc., Newspaper Div.*, 747 F.2d 1153, 1158

10

(7th Cir. 1984) (parties must "present . . . arguments to the arbitrator below" to preserve a claim for federal court review).

*     *     *

For the foregoing reasons, we exercise our discretion to decline to issue a declaratory judgment at this time and dismiss Count I of Mondelez's complaint, without prejudice. *See Wilton*, 515 U.S. at 288, 115 S. Ct. at 2143.[3]

## II. STAY OF ARBITRATION

Count II of Mondelez's complaint petitions this Court for a stay of arbitration pending resolution of this suit in federal court. (Compl. ¶¶ 42–43.) Mondelez offers no independent ground to stay arbitration beyond completion of its declaratory judgment action, which we have

---

[3] The Union argues a different reason for declining to issue a declaration at this time: that no "actual controversy" exists that would warrant determining the current legal rights of the parties. (Mem. at 5.) The Union contends that the grievances all stem from past and completed acts, specifically because the complaint fails to state that Mondelez still prohibits working seven consecutive days, that the Union is still filing grievances, or that the dispute continues to exist under a successor collective bargaining agreement that has since taken effect. (*Id.* at 5–6.) None of these arguments have purchase. The complaint alleges the parties were bound by a collective bargaining agreement ("CBA") with mandatory grievance procedures when Mondelez instituted its prohibition; Union members filed nearly 1,500 grievances under that CBA, which the parties consolidated; the Union demanded arbitration; and the parties selected an arbitrator and an arbitration date. (Compl. ¶¶ 11–12, 26–29, 32.) Arbitration over the grievances would likely have been completed but for Mondelez's refusal to arbitrate while seeking to vindicate its public policy argument in court. (*Id.* ¶ 37; Resp. at 9 (reporting the Union "has not withdrawn the grievances and clearly still intends to arbitrate them").) Mondelez alleges an "actual controversy." *See Chi. Typographical Union No. 16 v. Chi. Sun-Times, Inc.*, 935 F.2d 1501, 1507–08 (7th Cir. 1991) (defining "[g]rievance arbitration" as parties agreeing to arbitrate disputes arising from a CBA, and separately stating that "[e]vents giving rise to a right to compel arbitration" evidence "the ripening of disagreement into actual controversy"); *Chase Bank USA, N.A. v. Swanson*, No. 10-CV-06972, 2011 WL 529487, at *2 (N.D. Ill. Feb. 4, 2011) (listing cases finding "actual controversy" in Declaratory Judgment Act claims even where one party refuses to arbitrate). We accordingly do not adopt the Union's rationale in exercising our discretion under the Declaratory Judgment Act.

11

dismissed. As our decision on Count I concludes the proceedings before us, we dismiss Count II of Mondelez's complaint as moot.[4]

## CONCLUSION

For the foregoing reasons, Count I of Mondelez's complaint is dismissed, without prejudice, to allow the parties to proceed to arbitration. Count II, which is contingent on the continuation of Count I, is likewise dismissed. It is so ordered.

                                                                                        _____
                                                                                        Honorable Marvin E. Aspen
                                                                                        United States District Judge

Dated: January 16, 2019
        Chicago, Illinois

---

[4] The Union also contends that Mondelez's claim is preempted by federal labor law. (Mem. at 8–10.) Because we dismiss both counts of Mondelez's complaint on other grounds, we do not reach the issue. Additional arguments regarding procedural matters raised by the Union are committed to the judgment of the arbitrator. (*See* Mem. at 3–4 (arguing Mondelez waived its public policy argument); *id.* at 10–11 (arguing that Mondelez's claims of laches are reserved for the arbitrator).) *See Beer, Soft Drink, Water, Fruit Juice, Carbonic Gas, Liquor Sales Drivers, Helpers, Inside Workers, Bottlers, Warehousemen Sch. Sightseeing, Charter Bus Drivers, Gen. Promotional Emps. of Affiliated Indus., Local Union No. 744 v. Metro. Distributors, Inc.*, 763 F.2d 300, 302 (7th Cir. 1985) (once parties are obligated to submit to arbitration, "then any procedural questions growing out of the dispute and bearing on its final disposition should be left to the arbitrator") (citing *John Wiley and Sons, Inc. v. Livingston,* 376 U.S. 543, 557, 84 S. Ct. 909, 918 (1964)).